## MRS. PETE ARNOLD V. THE STATE.

### No. 3669.   Decided October 20, 1915.

### Rehearing denied November 17, 1915.

**1.—Swindling—Employment Agency—Sufficiency of the Evidence.**

Where, upon trial of swindling, the evidence showed that the defendant operated an employment agency, and represented to the prosecuting witness that employment was waiting for him, upon which he paid her $5 in advance, etc., and the testimony authorized the jury to believe that all of her said representations to the prosecuting witness, in order to get his money were false and were known by her, and not by him to be false, at the time, and that the prosecuting witness relied upon them, and was thereby induced to pay defendant his money which she refused to refund, the conviction was sustained.

**2.—Same—Evidence—Other Offenses—Moral Turpitude.**

Upon trial of swindling, there was no error in permitting the State, for the purpose of impeaching defendant, to ask her on cross-examination whether she had not been charged heretofore with swindling in ten or fifteen other cases, which she answered in the affirmative, as this certainly showed moral turpitude.

**3.—Same—Evidence—System and Intent—Other Offenses.**

Where defendant testified that she did not intend to swindle the prosecuting witness, or any other person under substantially the same contract she had made with prosecuting witness, and the question of intent and system in like transactions became a material issue, there was no error in permitting the State to prove several other like transactions which defendant had with different parties about the same time she had the transaction with prosecuting witness.

**4.—Same—Sufficiency of the Evidence—Printed Contract—Oral Explanation.**

Where defendant contended that the printed contract which she had prosecuting witness to sign at the time he paid her his money, merged all of her representations therein, and that said contract was not a misrepresentation, held, that the State, or the prosecuting witness, would not be bound conclusively by said written contract, and could show by oral testimony the true facts of the transaction, which showed the misrepresentations.

**5.—Same—False Representations—Prosecuting Witness.**

Where defendant contended for the first time in this court that the prosecuting witness, who was alleged to be swindled, did not testify that he believed the said representations by the defendant to be true, and that he relied upon

them in parting with the title to his money when he paid it to the defendant, but the record showed that the testimony as a whole authorized the jury to believe that the prosecuting witness did believe defendant's false representations, and relied upon them, the conviction for swindling was sustained, under a proper charge of the court.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of misdemeanor swindling; penalty, a fine of $300 and six months confinement in the county jail.

The opinion states the case.

*John L. Poulter* and *Mays & Mays,* for appellant.—On question of the insufficiency of the evidence: Curtis v. State, 88 S. W. Rep., 236; Martin v. State, 36 Texas Crim. Rep., 125; Hurst v. State, 39 id., 196; Johnson v. State, 57 id., 347.

On question of other offenses: Gilbraith v. State, 41 Texas, 567; Owen v. State, 125 S. W. Rep., 405; Lightfoot v. State, 106 S. W. Rep., 345; Pace v. State, 124 S. W. Rep., 949; Pridemore v. State, 129 S. W. Rep., 1112; Johnson v. State, 50 Texas Crim. Rep., 118; Denton v. State, 42 id., 429; Haney v. State, 57 id., 158.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of system and intent, and other offenses: Long v. State, 39 Texas Crim. Rep., 537; McGlassen v. State, 36 id., 620; Nixon v. State, 31 id., 205.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of swindling J. J. Brown and her punishment assessed at a fine of $300 and six months in jail.

We will give a summary of what the evidence, though contradictory in some respects, was amply sufficient to establish. On April 20, 1915, and before and after that, she was engaged in running an employment agency in Fort Worth, and so advertised in the paper. Said Brown was a young man engaged in running dairies and feeding cattle, and was at the time feeding cattle at Corsicana. He saw her advertisement and called and talked to her over long distance 'phone, told her his qualifications and experience and the position he wanted. She told him she had the very position he wanted waiting for him; that it was as manager of a large farm and dairy. They then agreed that he should go to Fort Worth and see her about it the next day, which he did. She then repeated her representations to him and again told him the job was waiting for him and that the place was managing the farm and dairy where they were milking about sixty-five dairy cows and had about 1500 acres planted in wheat; that the position would pay him about $80 per month salary and he would be furnished a house free. He asked her the name of the party and the location. She refused to divulge this to him until he should pay her $10 in advance and sign

Vol. 77 Crim.-37

one of her printed contracts. He told her that he couldn't then pay her but $5; that he had to have a little money left and that he would pay her the other $5 when he got the position. He then paid her $5, signed one of her printed contracts and asked her again who the person was who was going to employ him at the salary and terms and for the purpose she had represented. She then told him it was Mr. R. E. Smith at Sherman. She then showed him a letter from said Smith to her, but she had torn off the place and date of the letter. It had been written nearly a year before. At her instance he then read it and saw from it that Mr. Smith had no such place as she had represented, she insisting that he had. He then declined to go to Sherman and see Smith without she should further communicate with him over the 'phone and know that he had the position for him that she represented he had. She 'phoned Smith and had a talk with him over the long distance 'phone. In effect, Smith told her that he had no such position. Brown, after waiting a sufficient time for her to so communicate with Smith, went to see her again, and she told him that she had talked to Smith and, in substance, Smith told her that he had such position and for him to come on. He immediately went to see Smith at Sherman. Smith told him, and swore on this trial, that he had no dairy and never had run a dairy; that he at that time milked only six or seven cows for his own use and that was a greater number than he had ever milked before; that he wanted no one to manage his farm,—he managed it himself, and declined to employ Brown for any such position as she had represented to him Smith then had for him. Brown was then out of money and had to go to work there to raise sufficient funds to return to Fort Worth, which he did, working for Smith at $1.75 a day sawing cord wood with a bunch of negroes. He had to support himself out of the $1.75 a day. He worked six days, got his money from Smith and returned to Fort Worth and demanded his money back, telling her what he had found out and done with Smith. She refused to repay him his money. He then prosecuted her first for the theft of the money. This court held that it did not amount to theft but the offense might be swindling. (76 Texas Crim. Rep., 512, 176 S. W. Rep., 159.) Thereupon, she was prosecuted in this case. The testimony authorized the jury to believe, and by their verdict they in effect did believe, that all of her said representations to Brown in order to get his money were false and known by her and not by him to be so at the time and that he relied upon them and was thereby induced to pay her his money which she refused to refund.

She testified on the trial. On cross-examination, for the purpose of impeaching her, the court permitted the State to ask her and she answered, that she had theretofore been charged with swindling in ten or fifteen cases. Swindling is certainly an offense showing moral turpitude. This evidence was admissible as has uniformly been held by this court in a large number of cases. Mr. Branch, in his Criminal Law, section 868, so states the rules to be and collates a considerable number of cases to that effect.

She swore that she did not intend to swindle Brown in the transaction she had with him and that she did not intend to swindle any other person with whom she had made like contracts under substantially the same kind of representations she had made to Brown. Therefore, the question of her intent in this transaction and her system in like transactions was material. The court, therefore, did not err in permitting the State to prove over her objections several other like transactions she had with different parties about the same time she had this transaction with Brown, for such testimony clearly tended to show what her intent was and the system she used in such transactions. This has been so uniformly decided in this State—and the text-books are all to the same effect,—that it seems useless to again cite the authorities, but see Branch's Criminal Law, sec. 338, where he collates a large number of cases.

The only other question appellant presents is her claim that the evidence is insufficient to sustain the verdict. Her contention and that of her attorneys on the trial and in the lower court was, in substance, that the printed contract which she had Brown to sign at the time he paid her his money, in effect, merged all of her representations therein, and that the effect of the contract was that she did not represent to Brown that Smith would employ him to do the work and at the salary she had stated to him, but that it authorized her, within thirty days, if Smith did not give him that position to get him some other employment of a different, or the same, kind. We do not so understand the contract, nor that the State nor Brown would be conclusively bound thereby and not permitted to show the true facts of the transaction. She herself, on cross-examination, testified that she wrote in the body of said contract, and herself signed it, this: "It is agreed and understood that in the event this position is not accepted the money is returned" and she testified that that was intended to vary the thirty days stipulation contained in the printed form and that she meant to return Brown his money if he did not accept the position. Taking the printed signed contract and all the testimony together, it amply shows that she made the said representations in effect as Brown had testified she made them and got his money on the faith that he would get the position from Smith she told him was waiting for him at the salary she represented, and a house free, and that if he didn't get that identical contract which she said Smith would make with him, that he was then and not in some other contingency to get his money back. It is certain that he did not get the position; that Smith had no such position at all, nor at the salary she represented he would get.

Her attorney who represented her in this court but who did not in the court below, now contends that the evidence is insufficient to sustain the verdict on the additional ground, not made in the court below and for the first time made in this court, to the effect that Brown did not testify he believed her said representations to be true and that he relied upon them in parting with the title to his money when he paid it to her. It is true that Brown, in his testimony, did not use that

specific language, but taking his testimony as a whole and his acts, there can be no question, and the jury was clearly authorized to believe, that Brown did believe her said false representations and relied upon them and paid her his money based solely on his reliance upon her said representations which the jury was authorized to believe from the testimony, were false. After a careful study of the evidence we think that it was amply sufficient for the jury to believe therefrom all the essential facts to authorize her conviction. The court so required the jury to believe before they could convict her.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied November 17, 1915.—Reporter.]